**NATIONAL ADVERTISING COMPANY, Plaintiff–Appellant,**

v.

**TOWN OF NIAGARA, Defendant–Appellee.**

**No. 1479, Docket 91–7117.**

United States Court of Appeals, Second Circuit.

Argued May 23, 1991.

Decided Aug. 15, 1991.

**146**

Myron D. Cohen, New York City (Michael R. Shebelskie, Hunton & Williams, of counsel), for plaintiff-appellant.

F. Warren Kahn, Niagara Falls, New York (Michael J. Cuddy, James Robert Pigot, of counsel), for defendant-appellee.

Before KEARSE, MAHONEY and SNEED,* Circuit Judges.

---

SNEED, Circuit Judge:

This is a First Amendment case in which a billboard company challenges a town's sign ordinance. The district court held that the ordinance violated the First Amendment by elevating commercial speech over noncommercial speech and by impermissibly favoring certain types of noncommercial speech over others based on content. The court then attempted to save the statute by excising the unconstitutional elements. We agree that the ordinance violates the First Amendment but find that the unconstitutional portions cannot properly be severed or limited. We therefore invalidate the statute as a whole.

### I.

FACTS AND PROCEEDINGS BELOW

Niagara's Local Law No. 2 regulates all types of signs and outdoor advertising within the town's limits. *See* Niagara, New York, Local Law No. 2, art. I, § 100.0 (1987). Its purposes include protecting property values, creating a more attractive economic and business climate, preserving the natural beauty of designated areas, providing a more enjoyable and pleasing community, and enhancing traffic safety. Local Law No. 2, art. I, § 100.0, art. IV, § 400.4. The key sections of the act provide that signs may only contain onsite advertising—that is, they may only describe business transacted, services rendered, or goods sold and produced on the premises where the sign is located. Local Law No. 2, art. II, §§ 200.8, .13–.16, art. VII, § 702.2. Thus, a property owner could erect a sign that said "Fried Chicken Sold Here" but not one saying "Save the Whales" or "Buy Brand X Beer," unless Brand X were sold there.

The law provides a variety of exceptions to this broad rule. For example, the law allows signs for historical purposes, bulletin boards for libraries and places of worship, temporary political signs during an election, temporary signs announcing ga-

* Honorable Joseph T. Sneed, Senior Circuit Judge, United States Court of Appeals for the

Ninth Circuit, sitting by designation.

rage sales, and temporary signs promoting events sponsored by civic, fraternal, and church groups, fire companies, and veterans and nonprofit organizations.[1] Finally, the bulk of the law concerns time, place, and manner restrictions describing the permit process and the sizes and characteristics of signs that are allowed. The law covers eleven pages and contains more than 130 provisions, including a severability clause.

National Advertising Company (National) sued the town claiming that the ordinance violates First Amendment rights relating to communication of noncommercial speech. National has standing to bring these claims given that some of the messages carried on its billboards contain noncommercial messages. The district court ruled that the ordinance was unconstitutional and severed various provisions.

The only question presented on appeal is whether the district court's severance was proper. National argues that severance was improper because 1) unconstitutional provisions remain in the ordinance; and 2) the permissible and impermissible portions of the statute are so intertwined that severance is inappropriate. The town argues that the district court acted properly and that the ordinance, as adjusted by the court, should be left in force.

## II.

## DISCUSSION

### A. The Unconstitutional Aspects of the Law

Neither party challenges the district court's determination of the reasons why the statute is unconstitutional. We will briefly review these reasons, however, to explain our attempts to bring the statute into conformity with the First Amendment.

This court has adopted the plurality decision in *Metromedia* concerning billboard regulation. *See National Advertising Co. v. Town of Babylon*, 900 F.2d 551, 556–57 (2d Cir.) (applying *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 493–521, 101 S.Ct. 2882, 2885–2899, 69 L.Ed.2d 800 (1981) (plurality)), *cert. denied,* — U.S. ——, 111 S.Ct. 146, 112 L.Ed.2d 112 (1990). The Court in *Metromedia* considered a sign ordinance that was remarkably similar to the one at issue here. The city of San Diego had passed an ordinance allowing only onsite advertising and providing various exceptions. The plurality found that the law violated the First Amendment in two ways. First, given that commercial speech is afforded less protection than other types of protected speech, the plurality concluded that it would be improper to prefer commercial speech over noncommercial speech. *Metromedia*, 453 U.S. at 513, 101 S.Ct. at 2895. This is, in essence, what the city did by preferring onsite advertising, a type of commercial speech, over all other types of speech, including noncommercial speech. *Id.*

The plurality found that the San Diego law also ran afoul of the First Amendment because of its exception provisions. Ordinarily, the government may not pick and choose among various types of *noncommercial* speech based on their content. *Id.* at 514–15, 101 S.Ct. at 2896. By allowing exceptions for signs with selected noncommercial content, such as news information and historical information, but not other types of noncommercial speech, the law contained impermissible content-based restrictions. *Id.* at 515, 101 S.Ct. at 2896.

A majority of the *Metromedia* court did agree on one point. Five justices found that the ordinance did not violate the First Amendment by allowing onsite commercial speech while forbidding commercial speech pertaining to offsite commerce. *See Metromedia*, 453 U.S. at 493–512, 101 S.Ct. at 2885–2895 (plurality opinion Parts I–IV joined by Justice Stevens). The Court noted that the government has more freedom in discriminating among various types of commercial speech than among noncommercial speech and found that the San Diego law satisfied the *Central Hudson* test

---

**1.** *See* Local Law No. 2, art. I, § 102.0, art. III, § 301.1, art. IV, §§ 400.1, 401.2–.3, 402.0–.13, 403.0, 405.0.

for laws that affect commercial speech. *Id.* at 512, 101 S.Ct. at 2895 (citing *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 563–66, 100 S.Ct. 2343, 2350–51, 65 L.Ed.2d 341 (1980)).

B. Severability

■ The district court correctly applied the logic of *Metromedia* and *Babylon* to Niagara's sign ordinance. The fact that portions of the statute are unconstitutional, however, does not end our inquiry. We must determine whether the invalid portions of the statute can be severed from the valid portions so the remainder of the statute can be preserved. Severability is a question of state law. *See Environmental Encapsulating Corp. v. City of New York*, 855 F.2d 48, 60 (2d Cir.1988) (citing *Watson v. Buck*, 313 U.S. 387, 395–96, 61 S.Ct. 962, 964, 85 L.Ed. 1416 (1941)). As a general rule, a court should refrain from invalidating an entire statute when only portions of it are objectionable. *Cf. People ex rel. Alpha Portland Cement Co. v. Knapp*, 230 N.Y. 48, 60–61, 129 N.E. 202, 207 (1920), *cert. denied*, 256 U.S. 702, 41 S.Ct. 624, 65 L.Ed. 1179 (1921). Justice Cardozo stated the general rule over seventy years ago: "Our right to destroy is bounded by the limits of necessity. Our duty is to save unless in saving we pervert." *Id.* 230 N.Y. at 62–63, 129 N.E. at 208. The preference for severance is particularly strong when the law contains a severability clause. *See People v. Kearse*, 56 Misc.2d 586, 596, 289 N.Y.S.2d 346, 358 (Civ.Ct.1968) (stating that inclusion of a severability clause in a statute creates a presumption that the legislature intended the act to be divisible); *see also Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 686, 107 S.Ct. 1476, 1481, 94 L.Ed.2d 661 (1987) (same). The presence of such a clause, however, is not dispositive. *See New York State Superfund Coalition, Inc. v. New York State Dep't of Environmental Conservation*, 75 N.Y.2d 88, 94, 550 N.E.2d 155, 157, 550 N.Y.S.2d 879, 881 (Ct.App.1989) (holding that objectionable sections were not severable from entire statute despite presence of a severability clause); *see also United States v. Jackson*, 390 U.S. 570, 585 n. 27, 88 S.Ct. 1209, 1218 n. 27, 20 L.Ed.2d 138 (1968) (the ultimate determination of severability will rarely turn on the presence or absence of a severability clause). We should not, for example, treat a severability clause as an invitation from the legislature to write whatever statute we can fashion from the constitutional remnants as augmented by our imagination.

■ The New York Court of Appeals has identified the following standard for determining whether severance is appropriate:

The principle of division is not a principle of form. It is a principle of function. The question is in every case whether the legislature, if partial invalidity had been foreseen, would have wished the statute to be enforced with the valid part exscinded, or rejected altogether. The answer must be reached pragmatically, by the exercise of good sense and sound judgment, by considering how the statutory rule will function if the knife is laid to the branch instead of at the roots.

*Alpha Portland*, 230 N.Y. at 60, 129 N.E. at 207. Put another way, the legislature could not have intended a provision to be severed if the balance of the legislation is incapable of functioning independently. *See Superfund Coalition*, 75 N.Y.2d at 94, 550 N.E.2d at 157, 550 N.Y.S.2d at 881; *see also Alaska Airlines*, 480 U.S. at 684, 107 S.Ct. at 1479–80. Thus, severance is inappropriate when the valid and invalid provisions are so intertwined that excision of the invalid provisions would leave a regulatory scheme that the legislature never intended. *Superfund Coalition*, 75 N.Y.2d at 94, 550 N.E.2d at 157–58, 550 N.Y.S.2d at 881.

C. The District Court's Approach

■ The district court ruled that the ordinance could be saved by severing eleven provisions, including the provisions that restricted signs to onsite advertising and the provisions that exempted certain types of noncommercial speech.[2] After listing the

---

2. The district court severed the following provisions: art. I, § 102.0, art. II, §§ 200.8, 200.- 13–.16, art. III, § 301.1, art. IV, §§ 401.3, 402.0, 403.0, 405.0.

provisions to be severed and noting that the law contains a severability clause[3] the district court made the following comments:

> What is the effect of severing the above provisions on the operation of the ordinance? Those provisions ... which previously allowed on-site commercial billboards but did not allow on-site noncommercial billboards must now allow both types.... [In addition, the sections that previously contained exceptions to the ordinance] must uniformly extend exceptions to all forms of noncommercial speech. Hence noncommercial billboards which are located off-site can now feature a different noncommercial message without fear of violating the billboard provision of defendant's ordinance.

Order of December 28, 1990, *National Advertising Co. v. Town of Niagara*, No. CIV-89-139C, at 566-67 (W.D.N.Y.).

Viewed alone, this passage has a relatively clear meaning. Noncommercial speech must be permitted on those sites previously restricted to commercial speech limited to "advertising strictly incidental to a lawful use of the premises." This limitation clearly would not apply to noncommercial speech on commercial sites. Were this all the district court decreed, its invocation of severability would rest on more secure grounds. Its decree, however, swept from the ordinance eleven provisions, the ab-

sence of which causes the ordinance to resemble a gutted building.

The "Definitions" section of the ordinance, for example, carefully defines various types of "signs" and excepts from that term those signs "erected and maintained pursuant to and in discharge of any governmental regulations or historical purposes."[4] The district court struck from the ordinance this exception. Presumably that type of sign must now be governed by the preceding twenty-four subsections.[5] On the other hand, if it does not mean that, what is its meaning?

More significantly, the district court also deleted section 200.8 from the ordinance, which restricted onsite signs to "advertising strictly incidental to a lawful use of said premises."[6] This was the heart of the ordinance. It limited commercial speech to signs describing the commercial activity being pursued. Four other subsections applicable to onsite commercial speech were struck, sections 200.13 through and including 200.16. This removed the requirement that the commercial speech of an onsite sign's text be submitted to the Town Building Inspector. Also removed were the strict limitations imposed on the subject matter of these signs.[7]

These deletions leave the status of commercial speech quite uncertain and remove a useful benchmark by which the constitutional propriety of noncommercial speech

3. Section 1700.0 says the following:
   If any section, subsection, sentence, clause, phrase or other portion of this local law is for any reason held invalid or unconstitutional by any court of competent jurisdiction, such portion shall be deemed as a separate, distinct and independent provision, and such holding shall not effect the validity of the remaining portions hereof.
   Local Law No. 2, art. XVII, § 1700.0.

4. The text of this section reads as follows: "For the purpose of this local law, the term 'sign' does not include signs erected and maintained pursuant to and in discharge of any governmental regulations or historical purposes." Local Law No. 2, art. I, § 102.0.

5. *See id.* art. I, §§ 101.1–.24.

6. This section contains the following:
   Signs shall not be allowed on a premises unless such signs carry advertising strictly incidental to a lawful use of said premises,

including signs or sign devices indicating the business transacted, services rendered, goods sold or produced on the premises, and name of the business, person, firm or corporation occupying said premises.
*Id.* art. II, § 200.8.

7. The deleted sections read as follows:
   Section 200.13 The text of each sign is subject to approval by the town building inspector and is limited to:
   Section 200.14 The name or assumed name of the operator of the business on the property of which the sign is located.
   Section 200.15 Principal business or businesses conducted on the property.
   Section 200.16 Brief indication of the products or services available and the price thereof.
   *Id.* §§ 200.13–.16.

could be measured. Even had the district court intended to allow noncommercial speech to coexist with onsite commercial speech on approximately equal terms, the severance of the basic provision regulating onsite commercial speech makes this impossible to implement.

Two additional instances in which severed sections also have left large gaps in the ordinance should be mentioned. First, section 301.1 regulating signs of certain nonprofit organizations was deleted.[8] Left, however, was section 301.0, which subjects these signs to the permit process which now has been stripped of legislative guidance.[9] Second, section 401.3, which defines a "Political Sign," and section 402.0, which subjects such signs to fairly detailed regulations but exempts them from the permit process, were deleted.[10] Standing like the shattered walls of a structure ravaged by a tornado are thirteen sections governing this category of signs which is no longer within the scope of the Ordinance.[11]

Finally, also severed are the rules relating to Non–Political Temporary signs, including those of "Civil and Other Organizations."[12] What, if anything, governs the use of these signs is a mystery.

While it remains true that the ordinance contains many provisions not severed such as definitions, certain general regulations as well as specific regulations governing temporary signs, political signs, plaza and mall sign sizes, and permit procedures, the manner in which these provisions are affected by the constitutionally required surgery is uncertain. For example, the ordinance in section 101.3 defines a billboard as follows: "Any sign that attracts attention to an object, product, service, place, activity, institution, organization or business not available or located on the premises where the sign is installed." Section 200.6 provides that billboards are not permitted in the Town of Niagara. This structure fitted

8. The text of this section reads as follows:
   Signs or bulletin boards customarily incidental to places of worship, libraries, museums or schools, fire companies, or fraternal organizations, which signs or bulletin boards shall not exceed thirty-two (32) square feet in area and shall be located on the premises of such institutions. Such signs shall be exempt from fees.
   *Id.* art. III, § 301.1.

9. The text of this section reads as follows: "The following signs are permitted in any zone or use district, but require a permit as provided herein." *Id.* § 301.0.

10. The text of section 401.3 reads as follows: "Political Sign—A temporary sign announcing or supporting political candidates or issues connected with any national state or local election, referendum, or ballet proposition." *Id.* art. IV, § 401.3.
    The text of section 402.0 reads as follows: "No political sign shall be hereafter erected, placed or maintained at any place in the Town of Niagara, New York, except as provided by this local law. No permit shall be required for any political sign." *Id.* § 402.0.

11. These are article IV, sections 402.1 to 402.13. They cover time limitations, location, placement, structural types, number, and size of political signs.

12. *See* Local Law No. 2, art. IV, §§ 403.0, 405.0. The text of section 403.0 reads as follows:

Temporary signs announcing private "garage sales" which are to take place over a period of no more than three days are permitted, however, in no event shall such a temporary sign be posted prior to one week in advance of the date of such event and such signs shall be removed within forty-eight (48) hours following the last day of the sale. The person or persons conducting the sale shall include their name and address on the reverse side of any such sign; in no event shall more than two (2) signs be posted within the Town; and all such signs shall comply with the requirements of this law. The person conducting the sale shall be responsible for removal as provided herein. All other temporary signs shall comply and be governed by the provisions of this local law.
*Id.* § 403.0.
The text of section 405.0 reads as follows: Civic, Fraternal, Church, Fire Companies, Veterans Organizations, and Not–For–Profit Corporations as defined in Section 102 of the New York Not–For–Profit Law and duly registered in New York State, may erect signs of a temporary nature promoting events after being granted a written permit by the Town Building Inspector. The Organization will state time period of said sign on a written request for the permit prior to installation. All such sign permits may be issued at the discretion of the Town Building Inspector.
*Id.* § 405.0.

nicely with section 200.8, which required signs on the premises to exhibit only advertising incidental to the lawful use of the premises. This provision, however, has been eliminated from the ordinance. Does a sign on a business premises, not restricted as the eliminated ordinance required, become a billboard not permitted in the Town of Niagara? Another anomaly appears when section 200.12, which requires all signs to avoid giving a false or deceptive impression, is applied to a noncommercial sign without regard to its location.

We could close our eyes to these and other problems of adjusting Niagara's ordinance to the demands of the Constitution and give full effect to the severance clause of the ordinance. Were we convinced that the remaining structure was capable of being administered in a fair, coherent, and equitable manner, we would do so. We are not so convinced. When we consider how the statute will function when "the knife is laid to the branch instead of at the roots," we conclude that severance of the invalid sections would create a statute that is confusing and unworkable. *See Alpha Portland,* 230 N.Y. at 60, 129 N.E. at 207. Nor do we believe that it is proper for us to restore some provisions deleted by the district court and to rewrite others so as to make possible the type of administration that could resolve satisfactorily the problems the Town of Niagara now confronts. In short, it is clear to us that the ordinance must be redrafted and that the Town of Niagara, not this court, should do it.

The message of the district court, which we affirm, is clear. By elevating commercial speech over noncommercial speech and by impermissibly favoring certain types of noncommercial speech over other types of noncommercial speech based on content, the ordinance in its present form is unconstitutional. We decline to affirm the district court's effort to save a portion of the ordinance, and refuse to undertake a similar effort on our part.

### III.

### CONCLUSION

We are particularly hesitant to undertake revisions of the ordinance in light of the fact that we are a federal court interpreting a local ordinance. The interests of federalism and comity dictate conservatism in imposing our interpretive views on state statutes. *See Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 508, 105 S.Ct. 2794, 2804, 86 L.Ed.2d 394 (1985) (O'Connor, J., concurring).

Mindful of our responsibility to respect the interests of comity and federalism, we find that the ordinance must be declared unconstitutional as a whole. The decision of the district court is therefore AFFIRMED IN PART AND REVERSED IN PART.