Peter J. SAVAGO, Plaintiff,

v.

**VILLAGE OF NEW PALTZ,**
**Defendant.**

No. 1:02–CV–87.

United States District Court,
N.D. New York.

July 3, 2002.

---

Thornton, Bergstein & Ullrich, LLP, Stephen Bergstein, of counsel, Chester, NY, for Plaintiff.

Ainsworth, Sullivan, Tracy, Knauf, Warner and Ruslander, P.C., Maria C. Tebano, of counsel, Albany, NY, for Defendant.

## MEMORANDUM–DECISION AND ORDER

MORDUE, District Judge.

### INTRODUCTION

In this action under 42 U.S.C. § 1983, plaintiff challenges a municipal sign ordinance as violative of the First Amendment. Defendant moves for dismissal under Fed. R.Civ.P. 12(b)(6). Plaintiff cross-moves for summary judgment under Fed.R.Civ.P. 56(c). For reasons stated below, the Court denies defendant's motion and grants plaintiff's cross motion.

### COMPLAINT

The complaint, filed January 22, 2002, states that plaintiff owns a building in defendant Village of New Paltz ("Village"). Shortly after the terrorist attack on the World Trade Center on September 11, 2001, plaintiff hung on the building a sign measuring four feet by 25 feet, depicting two American flags and proclaiming: "Keep looking over your shoulder terrorists—we're coming for you. God bless America." Plaintiff states in his complaint that, although he removed his sign in December 2001, he intends to display it again if the nation experiences another terrorist attack. As a result of a recent amendment to the Village zoning ordinance, however,

plaintiff would now be required to obtain a permit to do so.

Plaintiff complains that the Village sign ordinance as amended distinguishes among classes of signs on the basis of content, grants Village officials discretionary authority to deny or revoke sign permits "at their whim," and elevates commercial speech over noncommercial speech, all in violation of the First Amendment. Plaintiff seeks judgment declaring that the ordinance is invalid, striking down the ordinance, enjoining defendant from enforcing the offending provisions, and awarding money damages and attorney's fees. The Court has subject matter jurisdiction. 28 U.S.C. §§ 1331, 1343(3), (4).

## THE MOTIONS

Defendant moves to dismiss the action under Fed.R.Civ.P. 12(b)(6). Plaintiff cross-moves for summary judgment under Fed.R.Civ.P. 56(c). Plaintiff's challenge to the ordinance is addressed to its face and not to the manner in which the village applied it in a particular factual context. There are no factual issues requiring discovery. Neither party requests discovery or relies on disputed facts. Indeed, defendant did not respond to plaintiff's Statement of Material Facts under Local Rule 7.1(a)(3). Accordingly, the Court proceeds to consider the motions based on the complaint and the text of the ordinance.

## APPLICABLE LEGAL STANDARDS

In addressing defendant's motion to dismiss the complaint under Fed.R.Civ.P. 12(b)(6), the Court accepts as true all material facts alleged in the complaint and draws all reasonable inferences in plaintiff's favor. *See McEvoy v. Spencer,* 124 F.3d 92, 95 (2d Cir.1997). Dismissal is proper only where it appears beyond doubt that plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *See Valmonte v. Bane,* 18 F.3d 992, 998 (2d Cir.1994).

On his cross-motion for summary judgment, plaintiff bears the initial burden of demonstrating that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If plaintiff satisfies this burden, and defendant does not demonstrate the existence of a disputed issue of material fact requiring a trial, summary judgment is appropriate. *See id.*

## STANDING

As a general rule, a party has standing to assert only a violation of its own rights. *See Virginia v. American Booksellers Ass'n, Inc.,* 484 U.S. 383, 392, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988). Exceptions to this rule in the First Amendment context allow a plaintiff to challenge a law on its face on the grounds that it is content-based, *see R.A.V. v. City of St. Paul,* 505 U.S. 377, 381, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992), that it might chill the First Amendment rights not only of the plaintiff, but of others not before the court, *see American Booksellers,* 484 U.S. at 392–93, 108 S.Ct. 636, or that it improperly delegates unbridled licensing discretion to a government official or agency. *See City of Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 757, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). Plaintiff, who advances all three of these arguments, has standing to bring this action. *See, e.g., North Olmsted Chamber of Commerce v. City of North Olmsted,* 86 F.Supp.2d 755, 761–62 (N.D.Ohio 2000).

## THE ORDINANCE

The Village's sign regulation scheme is set forth in section 30.53 of the Village zoning ordinance, as amended January 9,

2002. Section 30.53(B)(1) states that "no sign or other advertising device shall be erected, constructed, displayed, moved, reconstructed, extended, enlarged or altered within the Village of New Paltz, except in conformity with these regulations nor without first having obtained a permit from the Building Inspector." Section 30.53(B)(3) sets forth the procedure for issuance of a permit:

a. Process—It shall be the duty of the Building Inspector upon receipt of a properly completed application for a sign permit and fee, to examine such plans, specifications, locations and other data submitted and approve said plans if they are in compliance with all requirements of this Regulation and the Municipal Code of the Village. The Building Inspector shall then, within ten (10) working days, issue a permit for the erection of the proposed sign.

b. Condition—All sign permits shall include the condition that the permitted sign shall be maintained in safe and orderly condition. The Building Inspector may add such other conditions as may be necessary for the public safety and welfare.

c. Disapproval—In the event that plans submitted do not meet requirements of the Municipal Code, the Building Inspector shall notify the applicant in writing of the reason for refusal to issue a permit and return the application and fee to the applicant.

d. Time Limit—If the authorized sign is not erected within 180 days of the date the sign permit is granted, the permit shall become null and void and a new application must be submitted.

e. Violation—If, subsequent to inspection by the Building Inspector, a sign is found in violation of the condition specified in the sign permit, the owner shall be notified to bring the sign into compliance with the specified conditions. Failure to comply within thirty (30) days shall be cause for revocation of the permit and removal of the sign in accordance with § 30.53(F)(3) hereof.

Section 30.53(C) sets forth exemptions from the permit requirement as follows:

A permit shall not be required for the following signs . . . :

1. Name plate: One professional or business name plate not exceeding one (1) square foot in area for each professional tenant of the site.

2. Construction sign: One sign denoting the architect, engineer and/or contractor when placed on the site under construction; provided that such sign does not exceed twenty (20) square feet in area.

3. Real estate sign: A sign advertising the sale, lease or rental of the premises on which said sign is located, provided that the total aggregate face area of such sign shall not exceed twenty (20) square feet in the B–3 zoning district or six (6) square feet in all other zoning districts and further provided that such sign shall be removed no later than three (3) weeks after, the sale, lease or rental is consummated.

4. Traffic or municipal signs, legal notices and temporary emergency non-advertising signs as may be authorized by the Village Board of Trustees.

5. Temporary non-illuminated window advertising signs which occupy no more than twenty (20) percent of the total window area of the principal facade of the establishment and are

displayed for no longer than two (2) weeks.

6. Posters. Temporary signs [1] covering such activities as political and sporting events, entertainments and elections, provided that such signs shall not be displayed earlier than four (4) weeks prior to the event advertised and shall be removed within one (1) week after such event, and provided further that the size, height, illumination, location and other features of each sign must conform with, and the total aggregate face area of such signs shall not exceed, the regulations specified for the zoning district in which the poster or sign is located, excluding from the computation of such aggregate face area commercial or other signs on the premises for which a permit is required under this § 30.53.

7. Historical markers: Emblems, tablets, plaques or memorial signs when cut into masonry surface or when constructed of bronze, stainless steel or other similar permanent material installed by governmental agencies, religious or nonprofit organizations.

8. Accessory signs, as defined in § 30.5(B)(74)(a) hereof.[2]

9. Lights erected for holiday celebration between Thanksgiving Day and January 10th.

10. Signs displaying a noncommercial message, provided that the size, height, illumination, location and other features of each sign must conform with, and the total aggregate face area of such sign shall not exceed, the regulations specified for the zoning district in which the sign is located, excluding from the computation of such aggregate face area commercial or other signs on the premises for which a permit is required under this § 30.53.

Section 30.53(F)(1) provides:

1. An application must be made for each sign of a temporary nature before being displayed except those specified under "Exceptions to Approval requirements." (§ 30.53(C)).

2. Temporary signs shall be permitted for a period not exceeding two (2) weeks prior to the activity or event nor exceeding one (1) week after the activity or event.

Section 30.53(F)(7)(c) provides: "The Building Inspector may require that landscaping be used at the base of a free standing sign if such landscaping will make the sign more compatible with the surrounding area. The Building Inspector need not approve a sign permit if landscaping is deemed insufficient."

## DISCUSSION

### Content neutrality

■■■ "With respect to noncommercial speech, [a municipality] ... may not choose the appropriate subjects for public discourse[.]" *Metromedia Inc. v. City of San Diego*, 453 U.S. 490, 515, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) (plurality decision); *accord National Advertising Co. v. Town of Niagara*, 942 F.2d 145, 147 (2d Cir.1991) (noting that Second Circuit has adopted *Metromedia* plurality rationale). Content-based regulation of speech presumptively violates the First Amendment,

---

1. Section 30.5(B)(74)(m) defines a temporary sign as follows: "Any sign that is displayed only for a specified period of time and is not permanently mounted."

2. Section 30.5(B)(74)(a) defines an accessory sign as follows: "A sign located on premises which provides information such as 'In', 'Enter', 'Out', 'Exit', 'Parking in Rear', 'Crosswalk' or 'Watch for Pedestrians'."

see *R.A.V.*, 505 U.S. at 382, 112 S.Ct. 2538, and, upon constitutional challenge, is subjected to strict scrutiny. *See Boos v. Barry*, 485 U.S. 312, 321, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988). To withstand strict scrutiny, the ordinance must be shown to be necessary to serve a compelling governmental interest and narrowly drawn to achieve that end. *See id.; Eclipse Enters., Inc. v. Gulotta*, 134 F.3d 63, 67 (2d Cir. 1997).

■ An ordinance is content-based where it "prohibits otherwise permitted speech solely on the basis of the subjects the speech addresses[,]" *R.A.V.*, 505 U.S. at 381, 112 S.Ct. 2538, that is, where the municipal officer must examine the content of the speech to determine the applicability of the ordinance. *See Metromedia*, 453 U.S. at 515, 101 S.Ct. 2882 (invalidating as content-based an ordinance prohibiting all noncommercial signs except certain classes of signs such as those conveying religious symbols, news items, historical information and governmental information); *Sugarman v. Village of Chester*, 192 F.Supp.2d 282, 300 (S.D.N.Y.2002) (invalidating as content-based a number of sign ordinances including Village of Warwick ordinance, which exempted political signs from permit requirements provided that they met durational and size limitations, but exempted other classes of noncommercial signs from permit requirements without imposing such limitations); *Knoeffler v. Town of Mamakating*, 87 F.Supp.2d 322, 330 (S.D.N.Y.2000) (invalidating as content-based an ordinance exempting from permit requirement certain classes of signs, including traffic control signs, flags, memorial plaques, and signs concerning matters of public information and convenience).

Plaintiff here contends that the ordinance at bar discriminates among classes of noncommercial signs based on their content in two respects. First, he urges that the ordinance imposes impermissible content-based size restrictions on certain classes of noncommercial signs, *i.e.*, some noncommercial signs which exceed the size restrictions applicable in the district are subject to the permit requirement while others are not, depending on their message. For example, traffic signs,[3] legal notices, historical plaques, memorial signs and accessory signs, covered by subdivisions 4, 7 and 8, are exempt from the permit requirement regardless of their size, whereas those noncommercial signs covered by subdivisions 6 and 10 are exempt only if they comply with the size limitations applicable to the districts in which the signs are located. The Court agrees with plaintiff that the distinction between those "outsized" noncommercial signs which do require a permit (under subdivisions 6 and 10) and those which do not (under subdivisions 4, 7 and 8) can be made only by examining the text of each sign to determine whether it constitutes, for example, an historical marker, an accessory sign, or some other type of noncommercial sign. The Court finds that the ordinance contains content-based exemptions from the permit requirement for certain classes of outsized noncommercial signs, thus implicating the First Amendment.

---

**3.** While subdivision 4 excepts only those traffic or municipal signs, legal notices and temporary emergency non-advertising signs "as may be authorized by the Village Board of Trustees," there is no indication of what type of review the board would conduct or what standards it would apply. It is apparent from the context of the ordinance, however, that this requirement differs from a permit requirement. The parties have raised no issue concerning this authorization requirement and, in view of the Court's holding herein, it is not necessary to consider whether the authorization requirement constitutes a content-based burden on certain classes of noncommercial signs.

Second, plaintiff argues that the ordinance at bar contains content-based restrictions on temporary noncommercial signs. Section 30.53(F)(1)(a) provides that "[a]n application must be made for each sign of a temporary nature before being displayed except those specified under 'Exceptions to Approval Requirements.' (§ 30.53(C))." Section 30.53(C)(6) exempts from the permit requirement "[t]emporary signs covering such activities as political and sporting events, entertainments and elections, provided that such signs shall not be displayed earlier than four (4) weeks prior to the event advertised and shall be removed within one (1) week after such event[.]" Non-exempt temporary signs[4] are "permitted for a period not exceeding two (2) weeks prior to the activity or event nor exceeding one (1) week after the activity or event" under section 30.53(F)(1)(b). Thus, a permit is required for all temporary noncommercial signs which do not cover activities such as political and sporting events, entertainments and elections, resulting in a content-based distinction which presents First Amendment concerns. *See National Advertising Co. v. Town of Babylon,* 900 F.2d 551, 557 (2d Cir.1990).

■ Defendant argues that the ordinance does not offend the First Amendment because it does not prohibit any class of signs but merely regulates their size and/or duration. It is true that the ordinance does not bar outright any class of signs; rather, it imposes a permit requirement on some classes of signs but not on others. First Amendment protections, however, encompass not only content-based *prohibitions* on speech, but also content-based *restrictions* on speech. *See, e.g., Whitton v. City of Gladstone,* 54 F.3d 1400, 1405–07 (8th Cir.1995) (declaring ordinance unconstitutional on ground that "the durational limitations which are applicable only to political signs is a content-based restriction"); *Sugarman,* 192 F.Supp.2d at 300 (holding, *inter alia,* that Village of Warwick ordinance is content-based, where it exempted political signs from permit requirements provided that they met durational and size limitations, but exempted other classes of noncommercial signs from permit requirements without imposing such limitations). As stated by the court in *Sugarman,* "The First Amendment proscribes municipal favoritism of one form of speech over another, even if the ordinance merely allows one entity to post larger signs than another on the basis of the sign's content." 192 F.Supp.2d at 302.

### Strict scrutiny

As stated above, a content-based regulation of speech will be stricken as unconstitutional unless it survives strict scrutiny, that is, unless the municipality shows that it is "necessary to serve a compelling state interest and that it is narrowly drawn to

---

4. The Court assumes, although the ordinance is unclear on the point, that noncommercial temporary signs which do not cover "such activities as political and sporting events, entertainments and elections," do not fall within subdivision 10, which applies to "Signs displaying a noncommercial message." A review of the entire ordinance, including in particular section 30.53(F)(1), leads the Court to conclude that subdivision 10 is intended to be limited to permanent signs. In any event, if subdivision 10 were read to cover all non-commercial signs—temporary and permanent—except those included in subdivision 6, the result would be to impose a durational limitation only on those temporary noncommercial signs which cover such activities as political and sporting events, entertainments and elections, and to exempt all other temporary noncommercial signs from any durational limitation. Such an outcome creates a content-based durational limitation with First Amendment implications.

achieve that end."[5] *Boos*, 485 U.S. at 321; *Sugarman*, 192 F.Supp.2d at 291–92. Considering the Village of New Paltz ordinance in light of this standard, the Court notes that section 30.53(A) of the ordinance states the purposes of the sign regulations as follows:

These regulations are intended to

- protect and enhance the unique visual qualities of New Paltz
- conform to the guidelines and intent of the Comprehensive Master Plan of the Village
- encourage the installation of appropriate signs that harmonize with the buildings, neighborhood, and other signs in the area
- eliminate excessive and unsightly competition for visual attention through signs
- safeguard the general public by elimination of signs which may distract a motorist or contribute to the hazards of driving
- create a more attractive economic and business climate
- preserve citizens' rights to a customary means of earning a living
- protect property values
- maintain a standard of quality of all signs
- colors and material of signs should enhance the visual continuity of the district.

■ These stated purposes primarily promote aesthetics and traffic safety. While such interests may be substantial, *see, e.g., Metromedia*, 453 U.S. at 507–08, 101 S.Ct. 2882, there is no basis to hold

that they are compelling. *See generally Sugarman*, 192 F.Supp.2d at 302; *North Olmsted*, 86 F.Supp.2d at 767. Moreover, the ordinance is not sufficiently narrowly drawn to promote such interests. For example, the Court finds no basis for concluding that outsized historical plaques, memorial signs and accessory signs are any more aesthetic or safe than other outsized noncommercial signs. *See generally North Olmsted*, 86 F.Supp.2d at 768. Nor is there a basis for concluding that temporary signs covering political and sporting events, entertainments and elections are any more aesthetic or safe than other temporary signs. Accordingly, the Court holds that the permit requirement for outsized noncommercial signs found in subdivisions 6 and 10 of section 30.53(C) does not withstand strict scrutiny and must be stricken. Likewise, so much of section 30.53(C)(6) as exempts from the permit requirement those temporary signs which cover activities such as political and sporting events, entertainments and elections, does not withstand strict scrutiny and must be stricken.

**Severability**

■ The severability of a local ordinance is a question of state law. *See City of Lakewood*, 486 U.S. at 772, 108 S.Ct. 2138; *Gary D. Peake Excavating Inc. v. Town Bd. of Town of Hancock*, 93 F.3d 68, 72 (2d Cir.1996) (citing *National Advertising Co. v. Town of Niagara*, 942 F.2d at 148). A court should refrain from invalidating an entire statute when only portions of it are objectionable. *See id.* Under New York law,

---

**5.** *Long Island Board of Realtors v. Incorporated Village of Massapequa*, 277 F.3d 622 (2d Cir.2002), relied on by defendant, is inapposite. Unlike the case at bar, *Long Island Board* involves commercial speech. It is well established that commercial speech is afforded less protection than noncommercial speech. *See, Metromedia Inc. v. City of San Diego*, 453 U.S. 490, 513, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981).

[t]he question is in every case whether the legislature, if partial invalidity had been foreseen, would have wished the statute to be enforced with the invalid part exscinded, or rejected altogether. The answer must be reached pragmatically, by the exercise of good sense and sound judgment, by considering how the statutory rule will function if the knife is laid to the branch instead of at the roots.

*People ex rel. Alpha Portland Cement Co. v. Knapp,* 230 N.Y. 48, 60, 129 N.E. 202 (1920). Thus, "severance is inappropriate when the valid and invalid provisions are so intertwined that excision of the invalid provisions would leave a regulatory scheme that the legislature never intended." [6] *National Advertising Co. v. Town of Niagara,* 942 F.2d at 148. Moreover, judicial rewriting of an ordinance in order to save it is "decidedly disfavored." *National Advertising Co. v. Town of Babylon,* 900 F.2d at 557.

 Excision of the size limitations on permit-exempt noncommercial signs found in subdivisions 6 and 10 would, in the Court's view, impair the overall functioning of section 30.53(C) and would leave a sign permit exemption scheme that the legislature did not intend. The fact that the Village recently amended subdivision 6 to add a size restriction demonstrates that the Village is currently concerned with limiting the size of permit-exempt signs, as does the fact that the recently enacted general permit exception for noncommercial signs (subdivision 10) contains a size restriction. All permit exceptions for commercial signs contain size restrictions. Thus, as the ordinance now stands, almost all permit-exempt signs—temporary and permanent, commercial and noncommer-

cial—are subject to size restrictions, except for a few classes of noncommercial signs, such as historical markers and accessory signs, which by their nature are likely to be relatively few in number. The Court interprets the ordinance as setting forth a comprehensive scheme effectuating the Village's intention to impose size limitations on most classes of permit-exempt signs. Therefore, it would be improper for the Court to eliminate a significant portion of those restrictions. Nor could the Court properly impose judge-made size limitations on historical markers, accessory signs and other classes of signs which presently have no limitation; such an exercise would require the Court to assume the role of the Village in selecting appropriate size limitations.

Moreover, the limitation of permit exemptions under subdivision 6 to those temporary signs concerning activities such as political and sporting events, entertainments and elections demonstrates that the Village intended to restrict severely the classes of temporary signs which are permit-exempt, that is, to exempt only those signs addressing limited subjects, and then only for a short period of time (five weeks). Other exempt temporary signs are limited in duration by virtue of their nature (*e.g.,* construction signs and holiday displays) and/or by the terms of the ordinance (*e.g.,* real estate and temporary window advertising signs). The duration for all non-exempt temporary signs is three weeks. These aspects of the ordinance evince a municipal purpose of close supervision of content, size and duration of temporary signs. Thus, the Court cannot reasonably conclude that the Village's intent would be reflected by judicial modification of subdi-

---

**6.** While the preference for severance is particularly strong when the law contains a severability clause, *Gary D. Peake Excavating Inc. v. Town Bd. of Town of Hancock,* 93 F.3d 68, 72 (2d Cir.1996), the record herein does not establish whether defendant's ordinance contains such a clause.

vision 6 to create a permit exemption for all temporary signs, regardless of content or duration. Nor can the Court properly modify the ordinance by striking subdivision 6 altogether, as there is no basis to believe that the Village would approve an ordinance requiring permits for all temporary signs now exempt under subdivision 6, such as, for example, all political campaign signs.

Having found that it cannot properly salvage section 30.53(C), "Exemptions to Approval Requirements," by severing subdivisions 6 and 10, the Court considers whether it may properly strike the entire section 30.53(C) and leave intact the balance of the sign regulation scheme. On review of the entire sign regulation ordinance, the Court concludes that section 30.53(C) is inextricably intertwined with other portions of section 30.53, such that the entire sign regulation scheme must be stricken. For example, both subdivisions 6 and 10 of 30.53(C) incorporate the size, height, illumination, location and other limits applicable to the zoning district in which the sign is located, as set forth in section 30.53(F)(4), (5) and (6). Also, section 30.53(F)(7) sets forth requirements applicable in all districts. Indeed, the general guidelines found in section 30.53(A) state that the sign regulations are intended to "conform to the guidelines and intent of the Comprehensive Master Plan of the Village" and "encourage the installation of appropriate signs that harmonize with the buildings, neighborhood, and other signs in the area." These guidelines are evidence that the permit exemptions of section 30.53(C) are interwoven into an integrated sign regulatory scheme.

Another example of the interdependence of various provisions of the Village sign ordinance is found in section 30.53(F)(1), "Temporary signs," which requires a permit and imposes a three-week durational limitation for temporary signs pertaining to activities or events except those specified under section 30.53(C). Elimination of section 30.53(C) would leave unanswered a number of questions, such as, for example, whether to apply the three-week durational limitation of section 30.53(F)(1) to temporary real estate "For Sale" signs.

Moreover, the number and specificity of the permit exemptions found in section 30.53(C) strongly support the conclusion that the Village intended to leave several relatively large classes of signs free from the permit application process. A blanket permit requirement would thus not serve to effectuate the Village's intent.

The Court notes further that excision of 30.53(C) would not eliminate all content-based distinctions from the Village's sign-permit scheme. For example, section 30.53(D)(5) prohibits sandwich boards "except as displayed on the occasion of special events sponsored by non-profit or municipal organizations," and section 30.53(D)(5)(8) prohibits banners and similar devices "except for such non-permanent ones as are displayed on the occasion of special events sponsored by non-profit or municipal organizations." Both of these exceptions require the building inspector to examine the content of the signs to determine whether they pertain to special events.

## CONCLUSION

The Court concludes that portions of the sign ordinance offend the First Amendment, that these portions cannot be properly be severed, and that therefore the Village's entire sign permitting scheme as it presently exists is unconstitutional and must be redrafted.[7] Redrafting the sign

---

7. Although the Court does not reach the issue, in redrafting the sign regulations, the Village

regulations is a task for the Village, not the Court.[8] *See National Advertising Co. v. Town of Niagara,* 942 F.2d at 151. Accordingly, defendant's motion for dismissal under Fed.R.Civ.P. 12(b)(6) is denied. Plaintiff's cross motion for summary judgment under Fed.R.Civ.P. 56(c) is granted except as to damages. The Village is enjoined from enforcing section 30.53, which is declared invalid and stricken in its entirety.

Plaintiff has requested an award of "any damages available to him by law, including nominal damages, for the violation of his constitutional rights," and an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988. The Court will address these issues upon papers submitted by the parties in accordance with the following schedule. Plaintiff is directed to serve and file all papers in support of his application for damages, attorney's fees and costs within 30 calendar days of the date of this Memorandum–Decision and Order. Defendant is directed to serve and file all opposing papers within 20 calendar days thereafter. Plaintiff may, if so desired, serve and file reply papers within 10 calendar days thereafter. The form and length of all papers shall comply with Local Rule 7.1(a)(1) and (2), and any reply brief shall not exceed ten pages. The Court will consider the papers on submission, without oral argument, and will thereafter notify the parties if a hearing is required.

It is therefore

ORDERED that defendant's motion for dismissal under Fed.R.Civ.P. 12(b)(6) is denied; and it is further

---

may wish to reconsider those portions of the ordinance which plaintiff has challenged on the ground that they vest unbridled discretion in the building inspector. (For example, plaintiff challenges so much of section 30.53(B)(3)(b) as authorizes the building inspector, upon reviewing a sign permit application, to "add such other conditions as may be necessary for the public safety and welfare"; so much of section 30.53(B)(3)(b) as requires that each permit include the condition that the sign "shall be maintained in safe and orderly condition"; so much of section 30.53(F)(7)(c) as allows the building inspector to require landscaping to make free-standing signs "more compatible with the surrounding area"; and so much of section 30.53(E)(1) as provides that the Village Planning Board may disapprove an application for the installation of bulletin boards, community poles, murals, shopping center and office building sign plans "upon a finding that approval would be detrimental to the desirability, property values, safety or harmonious development of the municipality.") It is well established that "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional[,]" *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 150–51, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969), because such "unbri-dled discretion in the hands of a government official or agency ... may result in censorship." *City of Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 757, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). It is true that an ordinance which is not sufficiently precise, standing alone, to survive a facial challenge may yet pass constitutional muster if the municipality demonstrates that its application is "constrained by administrative construction or by well-established practice," *MacDonald v. Safir,* 206 F.3d 183, 192 (2d Cir.2000); nevertheless, the Village may prefer to redraft questionable portions of the ordinance with the goal of avoiding future challenges which might present triable issues of Village practice.

8. As the Second Circuit observed in *National Advertising Co. v. Town of Niagara,* 942 F.2d 145, 151 (2d Cir.1991) (citation omitted):

> We are particularly hesitant to undertake revisions of the ordinance in light of the fact that we are a federal court interpreting a local ordinance. The interests of federalism and comity dictate conservatism in imposing our interpretive views on state statutes. Mindful of our responsibility to respect the interests of comity and federalism, we find that the ordinance must be declared unconstitutional as a whole.

ORDERED that plaintiff's cross motion for summary judgment under Fed.R.Civ.P. 56(c) is granted except as to damages; and it is further

DECLARED that the Village of New Paltz Sign Regulations, section 30.53 of the Village of New Paltz zoning ordinance, is invalid; and it is further

ORDERED that the Village of New Paltz Sign Regulations, section 30.53 of the Village of New Paltz zoning ordinance, is hereby stricken in its entirety; and it is further

ORDERED that the Village of New Paltz is enjoined from enforcing Village of New Paltz Sign Regulations, section 30.53 of the Village of New Paltz zoning ordinance; and it is further

ORDERED that the Court will address the issues of damages, attorney's fees and costs in accordance with the decision herein.

IT IS SO ORDERED.