**LONG ISLAND BOARD OF REALTORS, INC., Plaintiff–Appellant,**

v.

**INCORPORATED VILLAGE OF MASSAPEQUA PARK, Defendant–Appellee.**

**Docket No. 01–7329.**

United States Court of Appeals, Second Circuit.

Argued Oct. 22, 2001.

Decided Jan. 24, 2002.

---

Howard W. Goldson, Melville, N.Y. (Goldson, Nolan Associates, of counsel), for Plaintiff–Appellant.

John M. Spellman, Garden City, N.Y. (Spellman Walsh Rice Schure & Markus, LLP, of counsel), for Defendant–Appellee.

(Laurene K. Janik, Ralph W. Holmen, Finley P. Maxson, National Association of Realtors, Chicago, IL), for Amicus Curiae in support of Plaintiff–Appellant.

Before FEINBERG, OAKES and F.I. PARKER, Circuit Judges.

OAKES, Senior Circuit Judge.

Plaintiff-appellant Long Island Board of Realtors ("the Board") appeals from a judgment of the United States District Court for the Eastern District of New York, Eugene H. Nickerson, *Judge.* The court denied the Board's motion for summary judgment, granted defendant Incorporated Village of Massapequa Park's ("the Village") cross-motion for summary judgment, and dismissed the Board's complaint. The district court found that the Village's sign ordinance did not violate the First Amendment as it contained permissible restrictions on the number, size, and location of signs on residential property, the duration for which signs may remain on residential property, and the presence of off-site commercial advertising. For the reasons discussed below, we affirm.

## BACKGROUND

On or about January 7, 1991, the Village enacted Chapter 286 of the Code of the Incorporated Village of Massapequa Park, regulating the posting of signs in the Village. Chapter 286 prohibited the use of commercial signs or any form of advertising on residential property other than "professional signs." "Professional signs" were defined in the ordinance as "the signs of doctors, lawyers, accountants, engineers, and brokers and any major profession duly licensed by the State of New York only."

On October 25, 1996, the Board, a not-for-profit corporation representing real estate licensees, brought this action against the Village. The Board's complaint alleged that parts of Chapter 286 violated the First Amendment.

On February 3, 1997, the Village repealed Chapter 286 and enacted a new sign law, also codified as Chapter 286. As revised, Chapter 286 regulates, but no longer prohibits, the use of commercial signs on residential property. Section 286–1, as reproduced in the record, specifies the legislative intent behind enacting Chapter 286 as follows:

The purpose of this Local Law is to regulate existing and proposed signs in order to:

(1) Preserve the aesthetic value of the property in the Incorporated Village of Massapequa Park.

(2) Enhance and protect the physical appearance and environment of [sic] Incorporated Village of Massapequa Park.

(3) Preserve the scenic and natural beauty of the Incorporated Village of Massapequa Park.

(4) Provide for a more enjoyable and pleasing community.

(5) Reduce sign and advertising distractions and obstructions that may contribute to traffic, congestion and/or accidents.

(6) Reduce hazards that may be caused by signs overhanging or projecting over public rights-of-way.

(7) Reduce hazards to bicyclists and pedestrians that may be caused from signs being placed on or around sidewalks or streets.

On October 31, 1997, the Board filed an amended complaint. The amended complaint alleges that §§ 286–4(B) and (C), 286–5(A)(4), 286–7, 286–8(A), and 286–12(C) and (D) are unconstitutional on their face.

Sections 286–4, 286–5, 286–7, and 286–8 fall under Article I of Chapter 286, which provides "General Provisions" for the Chapter. Section 286–4(B) provides:

No more than one (1) sign permit shall be in effect at any one time for a single parcel of property unless the property contains an identification sign or professional sign. . . .

Section 286–4(C) requires "that the application for a permit indicate the proposed location of the sign, which shall in no case be further than three (3') feet from the dwelling or building line in residential districts[,]" and § 286–5(A)(4) requires that applicants submit a picture or drawing depicting the proposed sign when applying for a sign permit.

Section 286–7 regulates the size of signs as follows:

No sign that is larger than fifteen (15″) inches in length and fifteen (15″) inches in height shall be placed in a Residential District. The Building Department or authorized Village official shall order the immediate removal of any sign in a Residential District that exceeds such fifteen (15″) inches in length and fifteen (15″) inches in height. The top of the sign shall not extend beyond the top of the pole, which pole shall not be any higher than four (4') feet from the ground.

Section 286–8(A) requires that signs "be removed from the property within twenty-four (24) hours of the transfer of the title to the property or the giving of possession of the property, whichever event first occurs."

Section 286–12 is part of Article II of Chapter 286, which contains regulations specifically relating to residential property. Section 286–12(C) regulates the number of signs allowed on residential property as follows:

In addition to one identification sign or professional sign, one (1) sign is allowed

for each parcel of land, provided that such sign shall be attached either to the dwelling or not more than three (3') feet from the building line and shall not exceed fifteen (15″) inches in length and fifteen (15″) in height. The second sign allowed on Residential Property shall not be another professional sign or another identification sign.

Section 286–12(D) prohibits off-site commercial advertisements on residential property.

In addition to challenging the above sections, the Board's amended complaint alleged that § 286–4(D) is unconstitutional. However, on June 14, 1999, the Village deleted § 286–4(D) from the ordinance. Before its repeal, § 286–4(D) provided:

The Building Department shall require that any real estate sign in a residential district contain only the words "FOR SALE" or "FOR RENT" and, at the option of the applicant, the word "BY OWNER" or "BY BROKER" and a telephone number as off-site commercial advertisements are prohibited in residential districts as set forth in Article II of this Chapter.

On March 16, 2000, both parties moved for summary judgment. The district court denied the Board's motion, granted the Village's motion, and dismissed the action. The court found that Chapter 286 contained permissible restrictions on the number, size, and location of signs on residential property, the duration for which signs may remain on residential property, and the presence of off-site commercial signs on residential property. The court specifically noted that, since the repeal of § 286–4(D), which dictated the language permitted on real estate signs, Chapter 286 was content-neutral, narrowly tailored to serve a significant government interest, and not overly restrictive.

## DISCUSSION

This court reviews a grant of summary judgment *de novo. Beckford v. Portuondo,* 234 F.3d 128, 130 (2d Cir.2000). Summary judgment is appropriate where the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In reaching this determination, "[t]he court must resolve all ambiguities and draw all inferences in favor of the non-moving party." *Catlin v. Sobol,* 93 F.3d 1112, 1116 (2d Cir.1996). To defeat a motion for summary judgment, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e) (emphasis omitted)).

 The amended complaint alleges that the challenged sections of Chapter 286 are unconstitutional prohibitions on commercial speech. While commercial speech "does not fall outside the purview of the First Amendment[,]" it is afforded "a measure of First Amendment protection commensurate with its position in relation to other constitutionally guaranteed expression." *Lorillard Tobacco Co. v. Reilly,* 533 U.S. 525, 121 S.Ct. 2404, 2421, 150 L.Ed.2d 532 (2001) (citations and internal quotation marks omitted). Thus, "[t]he protection available for particular commercial expression turns on the nature both of the expression and of the governmental interests served by its regulation." *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.,* 447 U.S. 557, 563, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).

The Board argues that the regulations are content-based restrictions, suggesting that they are subject to a heightened level of scrutiny. The Supreme Court recently considered whether different levels of scrutiny should apply in certain cases involving content-based regulation of commercial speech. *Lorillard,* 121 S.Ct. at 2421. The Court noted that "several Members of the Court have expressed doubts about the *Central Hudson* analysis and whether it should apply in particular cases." *Id.* (citing *Greater New Orleans Broad. Ass'n, Inc. v. United States,* 527 U.S. 173, 197, 119 S.Ct. 1923, 144 L.Ed.2d 161 (1999) (Thomas, *J.,* concurring in judgment); *44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 501, 510–14, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996) (joint opinion of Stevens, Kennedy, and Ginsburg, *JJ.*); *id.* at 517, 116 S.Ct. 1495 (Scalia, *J.,* concurring in part and concurring in judgment); *id.* at 518, 116 S.Ct. 1495 (Thomas, *J.,* concurring in part and concurring in judgment)). However, the Court found "'no need to break new ground'" and held that *Central Hudson* provided an adequate basis for decision, thus affirming that *Central Hudson* provides the basis for considering the constitutionality of regulation of commercial speech. *Id.* (quoting *Greater New Orleans,* 527 U.S. at 184, 119 S.Ct. 1923).[1]

*Central Hudson* sets forth the following four-part framework for considering regulation of commercial speech:

> At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask wheth-

---

**1.** Although not necessary for our analysis, we note that, as the district court found, section 286–4(D) was the only section of the ordinance that explicitly regulated the content of signs. Since the repeal of that section, no challenged provision in Chapter 286 is content-based on its face.

er the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

447 U.S. at 566, 100 S.Ct. 2343.

In the present case, the parties agree that real estate signs are lawful and seek to convey truthful speech. The parties further agree that, based on the purposes outlined in § 286–1, Chapter 286 seeks to implement aesthetics and safety, which are substantial governmental interests. Therefore, only the last two steps of *Central Hudson*'s analysis are at issue.

██ "The third step of *Central Hudson* concerns the relationship between the harm that underlies the [Village]'s interest and the means identified by the [Village] to advance that interest." *Lorillard,* 121 S.Ct. at 2422. " '[T]he speech restriction [must] directly and materially advance the asserted governmental interest.' " *Id.* (quoting *Greater New Orleans,* 527 U.S. at 188, 119 S.Ct. 1923). The fourth step of *Central Hudson* " 'complements' the third step, 'asking whether the speech restriction is not more extensive than necessary to serve the interests that support it.' " *Id.* (quoting *Greater New Orleans,* 527 U.S. at 188, 119 S.Ct. 1923).

██ The Village has the burden of satisfying the third and fourth steps of *Central Hudson. See City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 416, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993); *Nat'l Adver. Co. v. Town of Babylon,* 900 F.2d 551, 555 (2d Cir.1990). While not required to show that the regulation is the "least restrictive means[,]" the Village must demonstrate a "reasonable fit between the legislature's ends and the means chosen to accomplish those ends, ... a means narrowly tailored to achieve the desired objective." *Lorillard,* 121 S.Ct. at

2422 (citations and internal quotation marks omitted); *see also Bd. of Trustees v. Fox,* 492 U.S. 469, 476–81, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989). The fit need not be "perfect," but must be "reasonable." *Fox,* 492 U.S. at 480, 109 S.Ct. 3028. It need not represent "the single best disposition but one whose scope is in proportion to the interest served." *Id.* (citations and internal quotation marks omitted).

██ In § 286–1, the Village specifically states that the purpose of the sign ordinance is to preserve aesthetic value and reduce hazards. *Cf. Town of Babylon,* 900 F.2d at 556 (finding sign ordinances unconstitutional where ordinance did not identify the governmental interests and municipality failed to introduce extrinsic evidence of the interests). The sections of Chapter 286 that the Board alleges are unconstitutional regulate the number, size, and location of signs on residential property and the duration for which signs may remain on residential property. In addition, § 286–12(D) prohibits off-site commercial advertisements on residential property. On their face, such regulations directly advance the Village's interest in aesthetics and safety. *See Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 508–12, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981); *Gold Coast Publ'ns, Inc. v. Corrigan,* 42 F.3d 1336, 1346–48 (11th Cir.1994); *South–Suburban Hous. Ctr. v. Greater South Suburban Bd. of Realtors,* 935 F.2d 868, 896–97 (7th Cir.1991).

██ In addition, the regulations in Chapter 286 are not more extensive than necessary to serve the Village's interest in aesthetics and safety. Municipalities and other government bodies have "considerable leeway ... in determining the appropriate means to further a legitimate governmental interest, even when enactments incidentally limit commercial speech." *South–Suburban,* 935 F.2d at 897 (citing *Fox,* 492 U.S. at 477, 109 S.Ct. 3028); *see*

*also Members of the City Council v. Taxpayers for Vincent,* 466 U.S. 789, 807, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984); *Metromedia,* 453 U.S. at 511–12, 101 S.Ct. 2882. Where a legislature's ends are aesthetics and safety, permissible means have included the regulation of the size, placement, and number of signs, *see South–Suburban,* 935 F.2d at 897, as well as the prohibition of off-site commercial advertising. *See Metromedia,* 453 U.S. at 508–11, 101 S.Ct. 2882. Moreover, nothing on the face of the challenged sections of Chapter 286 prohibits the Board from displaying real estate signs or otherwise conveying its message. *See South–Suburban,* 935 F.2d at 897. Thus, the restrictions on the number, size, and location of signs, the duration for which signs may remain on residential property, and the presence of off-site commercial advertising further the Village's interest in aesthetics and safety while permitting the Board to display signs to inform people of the availability of a home. We therefore find a reasonable fit between the Village's ends and the means it has chosen to accomplish those ends.

During oral argument, the Board argued that although the Village repealed § 286–4(D), it continues to prohibit the Board's members from putting a broker's name or phone number on a sign. That is, the Board alleged that the Village unconstitutionally applies § 286–12(D) and other sections of Chapter 286 to the Board's members. Whether the Village's application of Chapter 286 unconstitutionally restricts the Board's speech is an issue appropriate for an as-applied challenge. The Amended Complaint makes only a facial challenge to sections of Chapter 286. It has not been amended, nor did the Board request leave to amend it, to include an as-applied challenge since the repeal of § 286–4(D). We therefore do not address the Board's allegation and express no opinion as to its merits.

Although the Board failed to make an as-applied challenge to Chapter 286, we note that during oral argument the Village conceded that the permit application in use at the time of this action was unconstitutional. The application asked the applicant what type of sign would be used and listed only four options: (1) for sale by owner; (2) for sale by broker; (3) for rent by owner; and (4) for rent by broker. Thus, although on their face the permit regulations in Chapter 286 apply to all signs, the application implied that only real estate vendors needed to apply for a permit. The Village consented before us to an injunction against use of such an application. We therefore remand and instruct the district court to enjoin the Village from use of the permit application described above.

### CONCLUSION

For the reasons discussed above, we affirm the opinion of the district court. We remand for the sole purpose of enjoining the Village's use of the permit application.