**CLEAR CHANNEL OUTDOOR, INC. and William Herbert, Plaintiffs,**

**v.**

**The TOWN BOARD OF the TOWN OF WINDHAM and Hon. Dominck Caropresso, Town of Windham Code Enforcement Officer, Defendants.**

**No. 1:03–CV–463.**

United States District Court, N.D. New York.

Jan. 5, 2005.

Edward J. Carroll, Kingston, NY, for Plaintiffs.

Boeggman, George, Hodges & Corde, PC, Cynthia Dolan, of Counsel, White Plains, NY, Attorneys for Defendants.

### MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. INTRODUCTION

Clear Channel Outdoor, Inc. and William Herbert ("plaintiffs") commenced the instant action pursuant to 42 U.S.C. § 1983 arising out of defendants' alleged violation of plaintiffs' First Amendment rights. Plaintiffs moved for summary judgment pursuant to Fed.R.Civ.P. 56(a). Defendants, the Town Board of the Town of Windham (the "Town") and the Honorable Dominick Caropresso, Town of Windham Code Enforcement Officer, cross-moved pursuant to Fed.R.Civ.P. 56(b) or in the alternative, pursuant to Fed.R.Civ.P. 12(b) for failure to state a claim upon which relief may be granted. Oral argument was heard on March 26, 2004 in Albany, New York. Decision was reserved.

## II. FACTS

In the 1960s plaintiff Clear Channel Outdoor, Inc. erected four billboards on

the plaintiff William Herbert's property by lease agreement. The property is in the Town of Windham, Greene County, and also within the Catskill State Park. Despite the passage of time and some litigation concerning the signs, they were still standing when the Town adopted a new sign ordinance in 1988, and a new site plan review law in 1989. Any changes in the signs, or the erecting of new signs, were subject to ordinance provisions. Plaintiffs changed the signs, or erected new signs, without complying with the provisions of the ordinance.

In December of 2002, defendants commenced an action against plaintiffs in Justice Court for violation of the sign ordinance and the site plan. Plaintiffs then filed a state Supreme Court action seeking declaratory and injunctive relief from the Town's enforcement action. In a ruling from the bench on the combined actions, the Honorable Thomas Spargo clearly delineated the questions before him. Plaintiffs' state action did not address any substantive aspects of the ordinance, but rather; (1) whether plaintiffs' signs were subject to the ordinance; (2) whether plaintiffs were subject to the Town's site plan review law despite alleged procedural defects; and (3) whether the Town's adoption of the ordinance was procedurally improper. (Doc. No. 14, Transcript of October 27, 2003, Honorable Thomas Spargo, Greene County Courthouse). Justice Spargo held that the laws in question could not be challenged on procedural grounds, the billboards at issue were new, and therefore the ordinance and the law in question applied to plaintiffs. The court also found that the ordinance and law were violated, and imposed a $500 fine. That decision was affirmed at *Clear Channel Outdoor, Inc. v. Town Bd. of Windham,* 9 A.D.3d 802, 780 N.Y.S.2d 822 (N.Y.App.Div.2004).

The instant action brought pursuant to § 1983 presents a substantive challenge to the Town's sign ordinance. More specifically, plaintiffs bring a First Amendment based facial challenge claiming that the sign ordinance is over broad, vague, an impermissible prior restraint, and that it improperly favors some speech over others.

As with most legislation, the ordinance states its purpose, defines its terms, lists the regulations and requisite procedures, and finally relates the legal consequences of violating its provisions. According to the ordinance preamble, the health, safety morals and general welfare of the Town's residents will be promoted through the regulating and restricting of signs of all types.

> It is intended to protect the property values, create a more attractive economic and business climate, enhance and protect the physical appearance of the community, preserve scenic and natural beauty, and provide a more enjoyable and pleasing community. It is further intended to reduce sign distractions and obstructions that may contribute to traffic accidents, reduce hazards that may be caused by signs overhanging or projecting over public rights of way, provide more open space, and curb the deterioration of natural beauty and community environment.

Permits are required for new signs and for alterations of existing ones. In Article II the ordinance defines "sign" as:

> any structure or part thereof, or any devise attached to, painted on, or represented on the exterior of a building or other structure or an outdoor free standing devise, upon which is depicted any letter, word, model, banner, flag, pennant, insignia, decoration, devise, or representation used as, or which is in the nature of, an announcement, direction, advertisement, or other attention directing devise.

A sign does not include the flag, pennant or insignia of any nation or association of nations or of any state, city or other political unit, or of any political, charitable, educational, philanthropic, civic, professional, or like campaign, drive, movement or event.

*SIGN, TEMPORARY*—A sign, not exceeding eight (8) square feet in area, intended to advertise or publicize an event of a public nature such as religious, civic, governmental, or fraternal organization meetings, fund raising drives, social events, etc., such event to occur within the immediate future (within thirty (30) days), at the close of which such signs will be [of no] further value and are to be removed by the organization responsible for their erection, within two (2) weeks after the event. Also, the decoration of premises during religious patriotic, or holiday seasons.

The regulations listed in Article III, which apply to all signs, consist of size, lighting and placement limitations. A few of the sign regulations are involved in the constitutional challenge:

B.   A business shall be allowed no more than three (3) advertising signs and three (3) business signs.

. . .

D.   Free Standing signs and signs attached to buildings shall be of no more than eighteen (18) square feet in the hamlets, and an additional amount not to exceed thirty-two feet (32) square feet outside the Hamlets.

E.   The use of portable signs is prohibited except for: temporary construction, "For Sale" and "For Rent" signs.

. . .

J.   Business dealing with products having national emblems, insignias or franchise signs shall comply with all provisions of this Ordinance, excepting where specified in writing, the use of a certain sign by a franchise.

Article IV explains the permit application requirements, and that the Town Board, or its designee, will grant permits in accordance with the ordinance. After the payment of a nominal $3.00 fee,

[i]f it shall appear that the proposed sign meets all requirements of this Ordinance and all of the other laws an ordinances of the Town of Windham [the Board or its designee] shall, within twenty (20) days issue a permit for the erection of the proposed sign.

Permits expire in six months if the proposed sign is not completed. Following the procedures set forth in Criminal Procedure Law, violators

shall be guilty of an offense, conviction of which shall be punishable by a monetary fine not to exceed Two Hundred and Fifty and 00/100 Dollars and/or a jail sentence not exceeding fifteen (15) days or both. Each day that a violation continues shall constitute a separate offense.

## III.   *DISCUSSION*

### A.   *Summary Judgment Standard*

Summary judgment is granted only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Silver v. City Univ.,* 947 F.2d 1021, 1022 (2d Cir.1991). If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning,* 610 F.2d 528, 531 (8th Cir. 1979); *United States v. Porter,* 581 F.2d 698, 703 (8th Cir.1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp.,* 477 U.S. at 327,

106 S.Ct. at 2555. There are no disputed facts for consideration in this action; accordingly, all parties believe that summary judgment is a proper vehicle to resolve their dispute.

### B. *Standing*

■ At the threshold, defendants argue that plaintiffs lack standing to challenge the constitutionality of the sign ordinance because "a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." *Parker v. Levy,* 417 U.S. 733, 759, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) (*quoting Broadrick v. Oklahoma,* 413 U.S. 601, 610, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)). Defendants recite the standard for challenges to vagueness in the context of an "as-applied" challenge to a statute. *See Village of Hoffman Estates,* 455 U.S. at 495 n. 7, 102 S.Ct. at 1191; *Parker,* 417 U.S. at 756, 94 S.Ct. at 2561 ("... because the statute is judged on an as applied basis, one whose conduct is clearly proscribed by the statute cannot successfully challenge it for vagueness").

Here, plaintiffs do not bring an as applied challenge but a facial challenge to the ordinance, and argue that the defendants' legislation effects the First Amendment rights of, not only themselves, "but all the residents of the Town of Windham, now and in the future." Facial challenges to statutes still must meet the constitutional case and controversy requirement and accordingly, denial of third-party standing is the norm.

■ Exceptions to this rule in the First Amendment context allow a plaintiff to challenge a law on its face on the grounds that it is content-based, that it might chill the First Amendment rights not only of the plaintiff but of others not before the

court. *Savago v. Village of New Paltz,* 214 F.Supp.2d 252, 254 (N.D.N.Y.2002) (citations omitted). Moreover, the First Amendment doctrine of "overbreadth" is an exception to the normal rule regarding the standards for facial challenges. *Virginia v. Hicks,* 539 U.S. 113, 118, 123 S.Ct. 2191, 2196, 156 L.Ed.2d 148 (2003); *see Members of City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 796, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). "Although a statute or ordinance may be neither vague, over broad, nor otherwise invalid as applied to the conduct charged against a particular defendant, he is permitted by the court to raise its unconstitutional vagueness or overbreadth as applied to other persons in situations not before the court." *Gooding v. Wilson* 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); *Grayned v. Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Broadrick v. Oklahoma* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *Plummer v. Columbus,* 414 U.S. 2, 94 S.Ct. 17, 38 L.Ed.2d 3 (1973); *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). "The Supreme Court has recognized that parties, like plaintiffs, with a commercial interest in speech may facially challenge an ordinance, raising the noncommercial speech interests of third parties." *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 504 n. 11, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981).

This exception to ordinary standing requirements is justified only by the recognition that free expression may be inhibited almost as easily by the potential or threatened use of power as by the actual exercise of that power. *New York State Club Assoc. v. New York,* 487 U.S. 1, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988). Plaintiffs' facial challenge brought pursuant to the First Amendment will not be dismissed on standing grounds.

## C. *Facial Challenge*

Plaintiffs argue that there are numerous constitutional infirmities in the Town's sign ordinance that would justify a finding of facial invalidity. In finding merit in three of plaintiffs' arguments and that the Town must redraft its ordinance because severing the offending provisions would not be proper, it is not necessary to address each of plaintiffs complaints. This is not to express any opinion as to merit—or lack thereof—of those arguments. It is presumed that the Town will engage in a thorough constitutional inquiry in redrafting its sign ordinance.

The First Amendment provides: "Congress shall make no law ... abridging the freedom of speech...." Under the Fourteenth Amendment, city ordinances are within the scope of this limitation on governmental authority. *Lovell v. Griffin*, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938).

Plaintiffs usually contend that the application of a particular statute in the context in which he has acted, or in which he proposes to act, would be unconstitutional. This is an "as applied" challenge. If successful, the plaintiff prevents the future application of the statute in a similar context. "A facial challenge, as distinguished from an as-applied challenge, seeks to invalidate a statute or regulation itself." *Horton v. City of St. Augustine*, 272 F.3d 1318, 1329 (11th Cir.2001). The general rule is that a facial challenge must be rejected unless there exists no set of circumstances in which the statute can constitutionally be applied. *See, e. g., United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (Bail Reform Act of 1984 not facially unconstitutional). But as the Supreme Court noted, the exception to this general rule is the facial challenge based upon First Amendment free-speech grounds. "We have applied to statutes restricting speech a so-called 'overbreadth' doctrine, rendering such a statute invalid in all its applications (i.e., facially invalid) if it is invalid in any of them." *Ada v. Guam Soc'y of Obstetricians & Gynecologists*, 506 U.S. 1011, 113 S.Ct. 633, 121 L.Ed.2d 564 (1992) (*citing Gooding v. Wilson*, 405 U.S. 518, 520–523, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972))("[T]he statute must be carefully drawn or authoritatively construed to punish only unprotected speech and not susceptible of application to protected expression.")

The first step in considering the constitutionality of legislation effecting protected speech is to determine whether or not it is content-neutral or content-based. The answer to that question determines the level of scrutiny that applies. An ordinance is content-based when the content of the speech determines whether the ordinance applies. *See Forsyth County v. Nationalist Movement*, 505 U.S. 123, 134, 112 S.Ct. 2395, 2403, 120 L.Ed.2d 101 (1992) (finding challenged ordinance to be content-based because the administrator necessarily had to examine the content of the speech to assess fees required by the ordinance); *Metromedia, Inc.*, 453 U.S. at 516, 101 S.Ct. at 2882 (finding challenged ordinance to be content-based because it "distinguished in several ways between permissible and impermissible signs at a particular location by reference to their content").

The government may impose reasonable time, place and manner restrictions on speech as long as they are content neutral, narrowly tailored to serve a significant government interest and leave open "ample channels for communication." *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989).

█ Where a municipality enacts a content-based speech regulation, strict scrutiny applies and the municipality must show that the "regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end."

*Boos v. Barry*, 485 U.S. 312, 321, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988). It is well settled that "the First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others." *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 804, 104 S.Ct. 2118, 2128, 80 L.Ed.2d 772 (1984). "First Amendment protections, however, encompass not only content-based prohibitions on speech, but also content-based restrictions on speech." *Savago*, 214 F.Supp.2d at 258.

If strict scrutiny is applied to a content-based regulation it will likely fail. First, while aesthetics and traffic safety are regularly found to be substantial enough government interests to support a content-neutral regulation, those interests are rarely compelling enough to support a content-based regulation. *See Savago*, 214 F.Supp.2d at 259; *Knoeffler v. Town of Mamakating*, 87 F.Supp.2d 322, 327 (S.D.N.Y.2000) (*citing City of Ladue*, 512 U.S. at 59, 114 S.Ct. 2038); *Dimmitt v. City of Clearwater*, 985 F.2d 1565, 1572 (11th Cir.1993).

█ Secondly, narrow tailoring is easier prescribed than done. A statute is narrowly tailored if it "targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Dae Woo Kim v.*

*City of New York*, 774 F.Supp. 164, 170 (S.D.N.Y.1991) (*quoting Frisby v. Schultz*, 487 U.S. 474, 485, 108 S.Ct. 2495, 2503, 101 L.Ed.2d 420). Therefore, a statute is unconstitutionally over broad, or overinclusive, if it includes within its prohibitions constitutionally protected conduct. *Grayned v. City of Rockford*, 408 U.S. 104, 114, 92 S.Ct. 2294, 2302, 33 L.Ed.2d 222 (1972). "Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *NAACP v. Button*, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963) (*citing Cantwell v. Connecticut*, 310 U.S. 296, 311, 60 S.Ct. 900, 906, 84 L.Ed. 1213 (1940)). But then there's the other, opposite, constitutional tailoring defect—underinclusivity.

Municipalities often attempt to balance the community interest in limiting signs with its citizens First Amendment rights by limiting sign use generally and then selectively exempting those messages the municipality presumes are valuable enough to outweigh the community interest that justified the sign regulation in the first place. The Town attempted this approach. Though this approach appeals to the common sense, it can lead to an unconstitutional ordinance in restricting too little speech.[1]

---

1. As Justice O'Connor remarked in concurring with the Court's decision in *City of Ladue v. Gilleo*, 512 U.S. 43, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994),

   [t]he normal inquiry that our doctrine dictates is, first, to determine whether a regulation is content based or content neutral, and then, based on the answer to that question, to apply the proper level of scrutiny. Over the years, some cogent criticisms have been leveled at our approach. And it is quite true that regulations are occasionally struck down because of their content-based nature, even though common sense may suggest that they are entirely reasonable. The content distinctions present in this ordinance may, to some, be a good example of this.

   The ordinance at issue in *City of Ladue* contained content-based exemptions to a general ban on signs within the City. Homeowners were only permitted, residential "identification signs", signs offering the property for sale, and signs warning of safety hazards. *Id.*, 512 U.S. at 45, 114 S.Ct. 2038. But though our rule has flaws, it has substantial merit as well. It is a rule, in an area where fairly precise rules are better than more discretionary and more subjective balancing tests. On a theoretical level, it reflects important insights into the meaning of the free speech principle—for instance, that content-based speech restrictions are especially likely to be improper attempts to value some forms of speech over others, or are particularly susceptible

While surprising at first glance, the notion that a regulation of speech may be impermissibly underinclusive is firmly grounded in basic First Amendment principles. Thus, an exemption from an otherwise permissible regulation of speech may represent a governmental "attempt to give one side of a debatable public question an advantage in expressing its views to the people." Alternatively, through the combined operation of a general speech restriction and its exemptions, the government might seek to select the "permissible subjects for public debate" and thereby to "control . . . the search for political truth."

*City of Ladue,* 512 U.S. at 51, 114 S.Ct. at 2043 (citations omitted).

When scrutinizing any speech restriction, courts are careful to note that each method of communicating ideas is "a law unto itself," and that law must reflect the "differing natures, values, abuses and dangers" of each method. *Metromedia, Inc.,* 453 U.S. at 501, 101 S.Ct. at 2889. "The uniqueness of each medium of expression has been a frequent refrain." *Id. (citing, e.g., Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 557, 95 S.Ct. 1239, 1246, 43 L.Ed.2d 448 (1975) ("Each medium of expression . . . must be assessed for First Amendment purposes by standards suited to it, for each may present its own problems.")).

The three sign provisions considered below are different methods of communication; portable signs, conventional signs, and flags.

Nonetheless, courts follow the guiding principles provided by the Supreme Court in *Metromedia* in the context of billboard regulation when reviewing sign ordinances generally. While that decision contained

five opinions, the Second Circuit has adopted the plurality opinion which struck down the provisions of San Diego's billboard ordinance that favored commercial speech over non-commercial speech, and those provisions that favored some forms of non-commercial speech over others. *See National Advertising Co. v. Town of Babylon,* 900 F.2d 551, 556–557 (2d Cir. 1990) (applying *Metromedia,* 453 U.S. at 493–521, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) (plurality)), *cert. denied,* 498 U.S. 852, 111 S.Ct. 146, 112 L.Ed.2d 112 (1990). Accordingly, since *Metromedia,* those are the two usual First Amendment challenges to sign ordinances. Plaintiffs raise both in challenging the Town's sign ordinance.

### 1. *Commercial Speech favored over Non-commercial Speech*

■ Having determined that portable signs are not desirable, and apparently not concerned that by banning this one manner of communication it has not left ample open alternatives for communication, the Town prohibited portable signs. The provision prohibits the use of portable signs, and then provides three exemptions to the ban, temporary construction signs, For Sale, and For Rent signs. Plaintiffs complain that the exempted signs are in the nature of commercial speech which means that the ordinance has favored this particular commercial speech over the non-commercial messages that may not be displayed on the prohibited signs. Unfortunately, the ordinance does not define portable signs—the only type it bans. It also neglects to define what is meant by temporary construction signs, though after consideration of other sign ordinances, it might be presumed that this refers to the work of on-site contractors engaged in

to being used by the government to distort public debate. On a practical level, it has in application generally led to seemingly sensible results. And, perhaps most importantly, no better alternative has yet come to light.

*Id.,* 512 U.S. at 59–60, 114 S.Ct. 2038 (citations omitted).

building, remodeling, and landscaping work.

The other two exemptions are simply related as "For Sale" and "For Rent" signs. The ordinance does not say real estate signs, as ordinances often do, or note that the signs must refer to or be placed at the premises offered. Thus, a "For Sale" sign may refer to real property but also to many other items like campers, cars, or boats. It may also refer to real or personal property located miles from the sign. This is important because onsite real estate signs have received special First Amendment treatment.

In *National Advertising Co. v. Town of Babylon*, 900 F.2d 551 (2d Cir.1990), the Second Circuit reviewed a district court's rulings regarding a sign ordinance that contained exceptions to a ban on signs. One such exception was for "For Sale" signs advertising real property. The plaintiffs' complaint in that case was the same as here—that by allowing these signs the municipality had favored commercial speech over non-commercial speech. After agreeing with the district court that other exemption(s) were improper, the court ruled that

> the town properly provided for an exemption from the ban for signs indicating that real property is for sale or lease. Rather than being an unconstitutional content-based preference for commercial speech over noncommercial speech, that exemption is appropriate following the Supreme Court's decision in *Linmark Associates v. Township of Willingboro*, 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977), which struck down on First Amendment grounds con-

tent-based restrictions upon the posting of "for sale" or "sold" signs.

*National Advertising Co.*, 900 F.2d at 557.

It is important to note that the Second Circuit cited *Linmark* in allowing the exemption because that case focused on the specific nature of real estate signs. In *Linmark* the Supreme Court considered a New Jersey township's ordinance that banned real estate signs in an effort to address the problem of white flight. The Court noted the unique function that location plays in relation to the message conveyed in real estate signs, and furthermore, that alternative channels for communicating real estate offerings would likely be less effective and more expensive. Signs advertising the sale or rent of items other than residential real property lack this essential factor. The instant ordinance has not narrowed its portable sign provision to real estate signs to force consideration of the "For Sale" sign exemption recognized in *National Advertising Co.* [2]

The instant ban on portable signs that effectively prohibits non-commercial speech in places where it allows commercial speech is akin to the ordinance found unconstitutional in *Metromedia*. The Court considered San Diego's billboard regulation that prohibited non-commercial speech in locations where it allowed commercial speech. Plaintiffs there complained further that the ordinance only allowed advertisements of onsite goods and services on its billboards, not off-site business offerings. Similar to the legislation at hand, the regulation favored some commercial speech over others. This was permissible, but the Court concluded:

**2.** The Court in *Linmark* stressed the suitability of alternative channels to communicate that a particular property is offered for sale since all forms of signs offering a sale and located on the premises were banned. Here, there is no apparent reason why a resident in Windham couldn't use other permitted sign forms to offer property for sale or rent. It is difficult to discern why this particular exception was thought to be necessary if real estate signs were the intended subject of the exemption.

The fact that the city may value commercial messages relating to *onsite* goods and services more than it values commercial communications relating to offsite goods and services does not justify prohibiting an occupant from displaying his own ideas or those of others. 453 U.S. at 512, 101 S.Ct. at 2895 (emphasis added).

█ The Town has prohibited non-commercial speech in *all* locations where it allows for the display of commercial messages offering sales, rental arrangements and presumably advertisements by construction contractors on portable signs. Under the current ordinance, a Windham resident may use a portable sign on his front lawn to advertise the sale of a boat located at a distant lake, but not to protest or support the War on Terror or abortion rights. As the Second Circuit explained in adopting the plurality opinion of *Metromedia,* "[g]iven that commercial speech is afforded less protection than other types of protected speech... it [is] improper to prefer commercial speech over noncommercial speech." *National Advertising Co. v. Niagara,* 942 F.2d 145, 147 (2d Cir.1991) (*citing Metromedia,* 453 U.S. at 513, 101 S.Ct. 2882; *see e.g., Knoeffler,* 87 F.Supp.2d 322, 326–327) (unconstitutional favoring of commercial speech over non-commercial where some commercial signs could be displayed permanently without a permit and non-commercial messages required a permit and had to be temporary).

The *Metromedia* court continued,

[i]nsofar as the city tolerates billboards at all, it cannot choose to limit their content to commercial messages; the city may not conclude that the communication of commercial information concerning goods and services connected with a particular site is of greater value than the communication of noncommercial messages.

Likewise, to the extent that the Town tolerates the use of portable signs at all, it cannot limit the content to specific commercial messages thereby favoring commercial speech over non-commercial speech. *See Mobile Sign, Inc. v. Town of Brookhaven,* 670 F.Supp. 68 (E.D.N.Y. 1987) (upholding durational limitation on portable signs that applied only to commercial speech).

█ Furthermore, neither San Diego's ordinance in *Metromedia* nor the Town's ordinance is narrowly tailored. In *Metromedia,* the court noted that "[t]he city does not explain how or why non-commercial billboards located in places where commercial billboards are permitted would be more threatening to safe driving or would detract more from the beauty of the city." *Metromedia, Inc.,* 453 U.S. at 513, 101 S.Ct. at 2895. Defendants have not addressed how the particular content-based exemptions of their ordinance directly and materially contribute or detract from a municipality's goals of safety and aesthetics. It is not clear, or likely demonstrable, that Windham's allowance of a portable sign that reads, "Bob's Construction" or "For Sale" is less harmful to the stated goals of the statute, than a portable sign that reads "Vote for Bob" or "Jesus Saves." Furthermore, these exemptions from the ban "diminish the credibility of the government's rationale for restricting speech in the first place." *City Of Ladue v. Gilleo,* 512 U.S. 43, 52, 114 S.Ct. 2038, 2044, 129 L.Ed.2d 36 (1994).

The portable sign provision of Windham's sign ordinance is unconstitutional in permitting the display of commercial messages where it prohibited non-commercial messages.

### 2. *Differential Treatment of Non-commercial Messages*

Plaintiffs argue that the Town's sign ordinance impermissibly discriminates be-

tween non-commercial messages in its treatment of temporary signs, flags, pennants and insignias.

### a. *Temporary signs*

■ Beginning with temporary signs, plaintiffs argue that the ordinance is content-based in that only some temporary signs are subject to additional size and durational requirements, and that the application of the restriction is determined by reference to the content of the sign. The ordinance provides that signs advertising or publicizing "events of a public nature" are to be placed no more than thirty days in advance of the event and removed within fourteen days of its conclusion. Events of a public nature are those "such as religious, civic, governmental, or fraternal organization meetings, fund raising drives, social events, etc. . . ." This restriction is applied to a narrow portion of a broad category of signs that would naturally be considered temporary signs. Other temporary sign possibilities are numerous but include those that react to a local happening or express a view on a controversial issue that may be up for legislative consideration. The provision includes its own size limitation for these temporary signs—eight square feet.[3]

Such a regulation is content based as one must read the sign to determine whether the durational and size limits apply. The durational limits have the effect of disfavoring messages relating community events in relation to all other temporary messages. The temporary signs the ordinance leaves out are simply subject to the regular sign requirements which do not limit the time they may be displayed. Furthermore, other temporary messages may be displayed on signs of up to either eighteen or thirty-two square feet depending on whether they are located within a hamlet or not.

"The Second Circuit has interpreted *Metromedia* as requiring strict content neutrality for all non-commercial speech." *Knoeffler*, 87 F.Supp.2d at 331 (*citing National Advertising v. Babylon*, 703 F.Supp. 228, 237 (E.D.N.Y.1989) ("A sign ordinance, to the extent that it regulates non-commercial speech may . . . [not] demonstrate a preference for the subject matter of certain non-commercial speech over other non-commercial speech.")).

■ Even if it was intended to serve a compelling state interest, the Town's ordinance is not narrowly tailored to serve the stated purposes of the ordinance. It has singled out, and disfavored, a particular type of temporary sign according to its content as opposed to simply setting a number, size, or duration restriction for all temporary signs. *See Savago*, 214 F.Supp.2d at 258 n. 4 (recognizing a similar improper durational limitation).

Content-based durational limits on signs are most often considered in the context of political speech where they are regularly declared unconstitutional. *See Knoeffler*, 87 F.Supp.2d at 333; *see also Whitton v. City of Gladstone*, 54 F.3d 1400, 1405 (8th Cir.1995) (declaring defendant's ordinance unconstitutional because "the durational limitations which are applicable only to political signs is a content-based restriction"); *Christensen v. City of Wheaton*, No. 99 CV 8426, 2001 WL 214202 at *2

---

**3.** This provision tags on a reference to "decorations of premises during religious patriotic and holiday seasons." It's likely that this is intended to bring decorations within the purview of the durational limits, since the size limits seem inapplicable. Interestingly, having noted decorations as within the sign ordinance, and thus implied that they constitute signs, and then having neglected to exempt them elsewhere, such decorations would apparently require a permit.

(N.D.Ill. Feb.27, 2001); *Curry v. Prince George's County, Maryland,* 33 F.Supp.2d 447, 455 (D.Md.1999).

Like the Hamptonburgh regulation struck down in *Sugarman v. Vill. of Chester,* the Town's temporary sign provision restricts the posting period of signs relating to certain events. 192 F.Supp.2d 282 (S.D.N.Y.2002). In *Sugarman,* the court noted that while the 60–day posting limit on temporary signs would pass constitutional scrutiny if it applied to all signs,. the ordinance permitted the posting of selected temporary signs for a longer period of time than others. *See Long Island Bd. of Realtors, Inc. v. Incorporated Vill. of Massapequa,* 277 F.3d 622, 628 (2d Cir.2002) ("Where a legislature's ends are aesthetics and safety, permissible means have included the regulation of the size, placement, and number of signs.") The Hamptonburgh ordinance allowed up to two-years for displaying temporary construction signs. The duration limitation was deemed unconstitutional. *Sugarman,* 192 F.Supp.2d at 297–298. Here, signs noting certain events are restricted to approximately forty-five display days, depending on the length of the event, and all other temporary signs may be displayed without any time restrictions. The content-based differential treatment that places additional durational restrictions on only some temporary signs renders that provision unconstitutional.

### b. *Flags, pennants and insignia*

█ The Town's sign ordinance's treatment of flags, pennants, and insignia suffers the same constitutional infirmity. Though the ordinance does not specifically define the terms "flag," "pennant," or "insignia," the definition of sign encompasses virtually any form of graphic communication, and is therefore broad enough to cover their use. Flags and pennants are commonly regulated under sign ordinances because they are easy sign substitutes if neglected by regulation. They mar landscapes and create visual clutter in the same manner as signs.

"Symbolism is a primitive but effective way of communicating ideas. The use of an emblem or flag to symbolize some system, idea, institution, or personality, is a short cut from mind to mind. Causes and nations, political parties, lodges and ecclesiastical groups seek to knit the loyalty of their followings to a flag or banner, a color or design." *Tex. v. Johnson,* 491 U.S. 397, 404–405, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) (*quoting West Virginia State Bd. of Educ. v. Barnette,* 319 U.S. 624, 662, 63 S.Ct. 1178, 1196, 87 L.Ed. 1628 (1943)). In apparent deference to this use of symbolic communication, the Town exempted certain flags, pennants and insignia from its definition of sign and thus all the restrictions contained within the ordinance. It states that a "flag, pennant or insignia of any nation or association of nations or of any state, city or other political unit, or of any political, charitable, educational, philanthropic, civic, professional, or like campaign, drive, movement or event" is not a sign.[4]

4. Defendants cite *American Legion Post 7 of Durham, North Carolina v. City of Durham,* where the court upheld a flag exemption provision that favored national flags over other non-commercial flags. 239 F.3d 601 (4th Cir. 2001). In that case "flags" were defined as national, state and political subdivision flags and all other flag forms were defined as "banners". The former were regulated less stringently than the latter. In tolerating the preferential treatment of "flags", the court was careful to note that the Durham ordinance contained a "substitution provision" which eliminated content-based distinctions for non-commercial flags. This was so "because any display carrying a non-commercial message could be substituted for any permitted display, so that any non-commercial flag not

It appears that the Town intended to exempt most forms of non-commercial speech expressed through the use of a flag, pennant, or insignia. Article III Regulation J states that "business dealing with products having national emblems, insignias or franchise signs shall comply with all provisions of this ordinance." This is likely intended to encompass flags—corporate and others—proposing a "business deal" and limit the deference to noncommercial communication. The exempted flags escape the official scrutiny of the permit process, the risk of permit denial and all the other sign limitations. Non-commercial speech is favored over commercial speech. As defendants point out, this sort of preferential treatment is not constitutionally problematic. *See National Advertising Co. v. County of Denver*, 912 F.2d 405, 408–10 (10th Cir.1990); *Georgia Outdoor Advertising, Inc. v. City of Waynesville*, 833 F.2d 43, 46 (4th Cir. 1987).

The problem is that by so specifically listing the nature of the content exempted and neglecting to exempt flags, pennants, and insignia communicating religious symbols, the Town has placed restrictions on religious speech when it completely exempted the listed speech topics. A Windham resident may display an American flag or one noting a Red Cross Blood Drive of any size without seeking permission from the Town because those flags would not be considered signs under the ordinance. However, in order to display a flag with a Christian symbol, the Islamic crescent moon and star, or the Star of David, the same resident would be required to obtain a permit and comply with the regulations because those flags would be considered signs. Giving the Town the benefit of the doubt, and assuming the

exclusion of religious speech from the list of exemptions was an oversight, it still cannot be allowed to stand.

In *Dimmitt v. City of Clearwater*, the Eleventh Circuit addressed an ordinance that restricted all flags but government flags. 985 F.2d 1565 (11th Cir.1993). After noting that such the distinction is content-based and that aesthetic interests are not compelling enough to support such a distinction, the court turned to the requirement of narrow tailoring. It found that the distinction between the flag types did not serve the stated ends of the legislation, aesthetics and traffic safety. *Dimmitt*, 985 F.2d at 1570. The same is true here. It is not plausible that the display of a thirty-two square foot Christian flag displayed after having passed government scrutiny during the permit process, is any more harmful to aesthetics or traffic safety than an American or Red Cross flag of unlimited proportion.

The Town's ordinance provision that exempts only certain flags, pennants and insignia from all requirements under the sign ordinance impermissibly favors some non-commercial messages over others, and is therefore unconstitutional.

### D.  *Severability*

■ Because three provisions of the Town of Windham's sign ordinance are unconstitutional, it must be decided whether to invalidate the entire ordinance or whether the unconstitutional provisions can simply be severed. Defendants argue that any provisions found to be unconstitutional can be severed, leaving the rest of the ordinance intact, valid and enforceable. Among other benefits, this would allow them to proceed to collect the fine set against plaintiffs.

---

meeting the ordinance's content criteria could nonetheless qualify for treatment as a 'flag' rather than a 'banner'." *Id.*, 239 F.3d at 603.

The Town ordinance does not contain a "substitution clause".

Severability is a question of state law. *See Watson v. Buck,* .313 U.S. 387, 395–96, 61 S.Ct. 962, 85 L.Ed. 1416 (1941). The ordinance does not contain a severability clause which would create the presumption that the Board intended it to be divisible. *See People v. Kearse,* 56 Misc.2d 586, 289 N.Y.S.2d 346, 358 (Civ.Ct.1968). New York law provides that "[i]nvalid portions of a statute may be severed if 'the remaining portions are sufficient to effect the legislative purpose deducible from the entire act' unless 'the valid and invalid portions are so interwoven that neither can stand alone.'" *Environmental Encapsulating Corp. v. New York,* 855 F.2d 48, 60 (2d Cir.1988). The question becomes: had the Board foreseen that the three provisions above would be declared unconstitutional, would it have intended that the ordinance be enforced without the offending sections. *See National Advertising Co. v. Town of Niagara,* 942 F.2d at 148 (*citing People ex.rel. Alpha Portland Cement Co. v. Knapp,* 230 N.Y. 48, 60, 129 N.E. 202 (N.Y.Ct.App.1920)).

The offending provisions, though improper, reflect the Town's attempt to balance its interests in limiting signs with its citizens' First Amendment rights. With the offending portions severed, the remaining ordinance would not reflect the regulatory approach of the municipality, however flawed it may be under the current ordinance.

Under the flag, pennant, and insignia provision, the Town clearly intended to allow non-commercial speech to override its aesthetic and safety concerns. Elimination of this latter part of the definition of "sign" would eliminate this deference. All non-commercial flags, which very likely includes a number of U.S. flags, would become subject to the permit process and sign regulations. Furthermore, striking the portable and temporary sign provisions leaves the ordinance bare of regulations regarding non-permanent signs which the Town clearly intended to restrict. Redrafting the sign regulations to comply with the First Amendment is a task for the Town. *See Savago,* 214 F.Supp.2d at 262; *National Advertising Co. v. Town of Niagara,* 942 F.2d at 151. Considering the total effect of removing three significant provisions from a very general and brief ordinance, the Town is required to redraft in total.

## IV. CONCLUSION

Three provisions of the Town's sign ordinance offend the First Amendment. The portable sign provision impermissibly favors commercial over non-commercial speech. The temporary sign and flag, pennant, and insignia provisions impermissibly discriminate between forms of non-commercial speech. These portions cannot be severed, and thus the sign ordinance is unconstitutional.

Accordingly, it is

ORDERED that

1. Plaintiffs' motion for summary judgment is GRANTED;

2. Defendants' motion for summary judgment, or in the alternative to dismiss for failure to state a claim, is DENIED;

3. The Town of Windham's sign ordinance is declared invalid and stricken in its entirety; and

4. The defendants are enjoined from enforcing the sign ordinance.

The Clerk is directed to file a judgment accordingly and close the file.

IT IS.SO ORDERED.